## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES GRACE**<br>**LA. DOC #349508** | **CIVIL ACTION NO. 6:14-cv-0080** |
| **VS.** | **SECTION P** |
| | **JUDGE HAIK** |
| **WARDEN LOUISIANA STATE**<br>**PENITENTIARY** | **MAGISTRATE JUDGE HILL** |

<u>**REPORT AND RECOMMENDATION**</u>

*Pro se* petitioner Charles E. Grace filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on January 13, 2014. Petitioner is an inmate in the custody of the Louisiana Department of Corrections, incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Petitioner attacks his March 5, 2010 conviction for two counts of armed robbery, two counts of conspiracy to commit armed robbery, aggravated burglary and conspiracy to commit aggravated burglary, for which he was originally sentenced on July 15, 2010 to a total of forty years imprisonment[1] by the Thirteenth Judicial District Court for Evangeline Parish, Louisiana.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

---

[1]Petitioner was sentenced to 40 years on the two armed robbery counts, 20 years for the two conspiracy to commit armed robbery counts, 15 years for aggravated burglary and 15 years for conspiracy to commit aggravated burglary, the sentences to run concurrently. After remand on direct appeal, petitioner was re-sentenced as a third felony offender to 99 years imprisonment.

## Statement of the Case

On March 5, 2010, petitioner was found guilty of two counts of armed robbery, one count of aggravated burglary, two counts of conspiracy to commit armed robbery, and one count of conspiracy to commit aggravated burglary.  On July 15, 2010, he was sentenced to serve 40 years imprisonment.

The convictions stemmed from petitioner's alleged involvement in the March 3, 2009 armed invasion of Renee Nelson's ("Nelson's") house by Antonio "Tony" Thomas ("Thomas") and Gavin Hebert ("Hebert"), during which money was taken by the perpetrators from four of the occupants of the home, while the perpetrators were armed with a gun and shotgun.[2] Hebert testified that petitioner planned the robbery, took them to pick up a sawed-off shotgun prior to the home invasion and provided information regarding the layout of Nelson's house and the location of a gun within the house, which was later retrieved by the perpetrators and used during the robbery.

Hebert further testified that petitioner drove him and Thomas to get dark clothing and later dropped them off at Nelson's house to execute the home invasion and robbery. At some point during the robbery, Thomas left with one of the victims, Kaninski Larnette, to get more money.  However, Thomas was shot and killed during a struggle at Kaninski's mother-in-law's house.  After the police arrived at Nelson's house, Hebert fled. He was apprehended the next day and informed the authorities about petitioner's involvement in

---

[2]Petitioner was charged with only two of the four armed robberies, the armed robberies of Kaninski Larnette and Nelson's minor daughter, M.N.

the crimes.     Petitioner directly appealed to the Louisiana Third Circuit Court of Appeal. On direct appeal petitioner asserted, amongst other claims, that there was insufficient evidence to support his convictions.  On April 6, 2011, the Louisiana Third Circuit Court of Appeal affirmed all of petitioner's convictions and his sentences for aggravated burglary and conspiracy to commit aggravated burglary; the Third Circuit vacated petitioner's sentences on the two counts of armed robbery and two counts of conspiracy to commit armed robbery, finding these sentences were indeterminate because the court imposed one sentence for multiple counts.  Accordingly, the court remanded the case for re-sentencing.  *State v. Grace*, 61 So.3d 812 (La. App. 3rd Cir. 2011).

The Louisiana Supreme Court denied petitioner's request for discretionary review on October 21, 2011 without comment.  *State v. Grace*, 73 So.3d 382 (La. 2011).

Petitioner was re-sentenced on February 7, 2013 as a third felony offender to 99 years imprisonment.

In the instant federal *habeas corpus* petition, petitioner raised six claims for relief. By separate Judgment this Court has denied and dismissed all of petitioner's claims on procedural default grounds, except his claim that there was insufficient evidence to support petitioner's convictions. [*See* rec. docs. 14 and 21].  The State has responded to that claim, filing an answer and a memorandum in opposition to federal *habeas corpus* relief. [rec. doc. 18].  Petition did not file a Reply.  This Report and Recommendation follows.

3

## Law and Analysis

### *Standard of Review*

This *habeas* petition was filed on January 13, 2014; therefore the standard of review is set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA).  *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir. 2000); *Orman v. Cain,* 228 F.3d 616, 619 (5th Cir. 2000).[3]  AEDPA substantially restricts the scope of federal review of state criminal court proceedings in the interests of federalism, comity, and finality of judgments.  *Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000) *citing Teague v. Lane,* 489 U.S. 288, 306, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and  *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000)[4] (noting that AEDPA "placed a new restriction on the power of federal courts to grant writs of *habeas corpus* to state prisoners").

Title 28 U.S.C. § 2254(d) as amended, states as follows:

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with

---

[3]Before enactment of AEDPA, "a federal court entertaining a state prisoner's application for *habeas* relief   . . .  exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact).  In other words, a federal *habeas* court owed no deference to a state court's resolution of such questions of law or mixed questions."  *Montoya* , 226 F.3d at 403-04  *citing Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) and 28 U.S.C. S 2254(d) (West 1994).

[4]Justice O'Connor delivered the opinion of the Court with respect to the standard of review, while Justice Stevens delivered the opinion of the Court with respect to other aspects of the opinion which have no bearing on the issues herein.  Accordingly, the undersigned will refer to Justice Steven's opinion as a concurring opinion.

respect to any claim that was adjudicated on the merits in State court
proceedings unless the adjudication of the claim –

> **(1)** resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

Under the deferential scheme of § 2254(d), as amended, this court must give

deference to a state court decision for "any claim that was adjudicated on the merits in

State court proceedings" unless the decision was either "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States,"  28 U.S.C. § 2254(d)(1), or the decision "was based

on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  28 U.S.C. § 2254(d)(2).

A *habeas* petitioner has the burden under AEDPA to prove that he is entitled to

relief.  *Ormon*, 228 F.3d at 619 *citing Williams,* 120 S.Ct. at 1518, and *Engle v. Isaac*,

456 U.S. 107, 134-35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).  Under § 2254(d), as

amended, "[t]he federal courts no longer have a roving commission to discern and

'correct' error in state court proceedings, but must exercise a more limited review . . . ."

*Grandison v. Corcoran*, 78 F.Supp.2d 499, 502 (D. Md. 2000).  Federal courts may not

grant the writ merely on a finding of error by a state court or on a finding of mere

disagreement with the state court.  *Montoya,* 226 F.3d at 404;  *Orman,* 228 F.3d at 619.

5

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a  set of materially indistinguishable facts."  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) *citing Williams,* 120 S.Ct. at 1523;  *Montoya,* 226 F.3d at 403-04 *citing Williams*, 120 S.Ct. at 1523.  "The 'contrary to' requirement 'refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision.'"  *Dowthitt,* 230 F.3d at 740 *citing Williams*, 120 S.Ct. at 1523.

Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt,* 230 F.3d at 741 *citing Williams,* 120 S.Ct. at 1523.  The standard is one of objective reasonableness. *Montoya,* 226 F.3d at 404 *citing Williams,* 120 S.Ct. at 1521-22.  A federal *habeas* court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . [r]ather, that application must also be unreasonable." *Williams,* 120 S.Ct. at 1522.

Section 2254(d)(2) speaks to factual determinations made by the state courts. *Dowthitt,* 230 F.3d at 741.  Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing

6

evidence.  *Id.*  Thus, this court must defer to the state court's decision unless it was based on an unreasonable determination of the facts in light of the record of the State court proceeding.  *Id. citing* 28 U.S.C. § 2254(d)(2); *Knox,* 224 F.3d at 476 *citing Chambers v. Johnson,* 218 F.3d 360, 363 (5th Cir. 2000).

In sum, "[a] state court's determination that a claim lacks merit precludes federal *habeas* relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786 (2011). Thus, under § 2254(d), "[a]s a condition for obtaining *habeas corpus* from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-787.  "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786.

**Sufficiency of the Evidence**

Petitioner argues that there was insufficient evidence to support his armed robbery, conspiracy to commit armed robbery, aggravated burglary and conspiracy to commit aggravated burglary convictions. More specifically, petitioner contends that the testimony of his co-conspirator, Gavin Hebert, was not credible as it was based on "his own self-preservation interests" and inconsistent because Hebert testified that petitioner was across the street while the perpetrators carried out the invasion of Nelson's home, yet petitioner's

7

girlfriend testified that Thomas called petitioner to pick him up, and because Hebert did not initially mention petitioner as being involved in the crimes when he made his first statement to police.  Petitioner additionally argues that statements made by deceased co-conspirator Thomas to victims Kaninski Larnette and Jowaski Frank, implicating petitioner in the crimes, should not have been considered by the jury because the State failed to establish a *prima facie* case of conspiracy.[5]

The claim presented to this court is identical to that presented to the Louisiana Third Circuit Court of Appeal on direct appeal.  In rejecting this claim, the Louisiana Third Circuit Court of Appeal, extensively analyzed the evidence presented at trial, and found that the evidence was sufficient to support petitioner's convictions under the federal standard set forth by the United States Supreme Court in *Jackson v. Virginia. State v. Grace*, 61 So.3d 812, 817-821 (La. App. 3rd Cir. 2011).  Based on the testimony and evidence presented at trial, the Third Circuit ultimately held as follows:

> Viewing the evidence in the light most favorable to the prosecution, the testimony and evidence is sufficient that the jury could have reasonably concluded that Tony [Thomas] and Gavin [Hebert] committed an armed robbery when they took money from M.N., and Kaninski [Larnette] while armed with the sawed-off shotgun and the silver handgun. M.N., and Kaninski [Larnette] testified that they did not want to give Tony [Thomas]

---

[5]Petitioner's Sixth Amendment claim under *Crawford* has been dismissed as procedurally defaulted.  The Court notes, however, that statements of co-conspirators are generally admissible against a defendant and such admission does not violate the Confrontation Clause because these types of statements are not testimonial.  *See United States v. King,* 541 F.3d 1143, 1145-1146 (2008) *citing Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004),  *United States v. Robinson*, 367 F.3d 278, 292 n. 20 (5th Cir. 2004) and *United States v. Holmes*, 406 F.3d 337, 348 & n. 16 (5th Cir. 2005); *United States v. Alaniz*, 726 F.3d 586, 608 (5th Cir. 2013) *citing King* and *Crawford, supra*.

and Gavin [Hebert] their money.

Further, the testimony and evidence is sufficient to establish that Tony [Thomas] and Gavin [Hebert] committed an aggravated burglary when they entered Renee's [Nelson's] house without authorization (by breaking down the back door) and that, although they arrived after the break-in, M.N., K.J., Renee [Nelson], Jowaski [Frank], Lisa, Wilinsky and Kaninski [Larnette] were all present in the house. Further, as discussed above, the evidence is sufficient to establish that Tony [Thomas] and Gavin [Hebert] intended to commit a felony therein – armed robbery. When Tony [Thomas] and Gavin [Hebert] broke into the house, they were already armed with a dangerous weapon, i.e., the sawed-off shotgun, and they further armed themselves by stealing the silver handgun from Renee's [Nelson's] bedroom drawer.

Although the defendant was not physically present in Renee's [Nelson's] house when these offenses occurred, his presence was not required for the jury to convict him as a principal to the offenses of armed robbery and aggravated burglary. The testimony supports the jury's conclusion that the defendant was involved in the commission of those offenses. Gavin [Hebert] testified that the defendant not only conspired to commit the crime, but that he drove Tony [Thomas] and Gavin [Hebert] to Renee's [Nelson's] house, acted as a lookout and was, at least initially, intended to be the "getaway driver" once the robbery was completed. Gavin's [Hebert's] credibility was bolstered by the general corroboration by other witnesses of the events that happened at Renee's [Nelson's] house. We note that, although the defendant offered alibi testimony, the jury was free to accept or reject that testimony. Further, the alibi testimony did not necessarily establish that the defendant was either at Shalana's mother's or grandmother's house at the time of the robbery.

As for the conspiracy charges, Gavin's [Hebert's] testimony was sufficient to establish that he, the defendant, and Tony [Thomas] agreed to commit an armed robbery with the purpose of "getting some money from Kaninski"[Larnette] and that they made an act in furtherance of the conspiracy when they drove to the abandoned house to retrieve the sawed-off shotgun eventually used in the crime. That testimony was corroborated, in part, by defense witnesses who testified that the defendant drove Tony [Thomas], Gavin [Hebert], and "another little guy" at the approximate time that Gavin [Hebert] claimed they planned the robbery.

9

As the finder of fact, the jury was free to accept, in whole or in part, the
testimony the victims and Gavin [Hebert] and to reject, in whole or in part,
the defense witnesses' testimony that the defendant only gave a ride to Tony
[Thomas], Gavin [Hebert] and "another little guy." The jury could observe
the demeanor of all the witnesses, and was in the best position to weigh
their testimony and evaluate their credibility. We find that any rational trier
of fact could have found that the State sustained its burden of proving all of
the elements of the charged offenses beyond a reasonable doubt.

*State v. Grace*, 61 So.3d at 820-821.

Under the appropriate standard of review, this court cannot find that the state

court's decision was contrary to, or an unreasonable application of, federal law, nor that

the state court's factual determinations were unreasonable in light of the State court

record.  Accordingly, the Third Circuit's decision can not be disturbed.

The standard for reviewing the sufficiency of the evidence is whether, viewing the

evidence in the light most favorable to the government, *any* rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v.*

*Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979) (emphasis

added); *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991) *quoting Jackson*, 443 U.S. at

319.  Thus, a federal court "may find the evidence sufficient to support a conviction even

though the facts also support one or more reasonable hypothesis consistent with the

defendant's claim of innocence."  *Gibson*, 947 F.2d at 783.  Stated differently, an

applicant is entitled to *habeas corpus* relief only if it is found that "no rational trier of fact

could have found proof of guilt beyond a reasonable doubt." *Id. citing Jackson,* 443 U.S.

at 324; *West v. Johnson,* 92 F.3d 1385, 1393 (5th Cir. 1996) *citing Jackson*, 443 U.S. at

10

322-26.

This court applies the *Jackson* standard "giving great weight to the state court's determination."  *Gibson*, 947 F.2d at 782, 786; *Porretto v. Stalder*, 834 F.2d 461, 467 (5th Cir. 1987).  Both direct and circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction.  *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990) *citing Jackson*, 443 U.S. at 319, 324-25, 99 S.Ct. at 2789, 2792; *Pate v. Wainwright*, 607 F.2d 669, 670 (5th Cir. 1979) (*per curiam*). The fact that most of the evidence against a defendant was circumstantial does not change the standard of review. *United States v. Zuniga-Salinas*, 945 F.2d 1302, 1305 (5th Cir. 1991) *citing United States v. Lechuga*, 888 F.2d 1472, 1476 (5th Cir. 1989).

 Contrary to petitioner's position, as correctly noted by the Louisiana Third Circuit Court of Appeal, review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, as those determinations are the exclusive province of the jury.  *United States v. Young*, 107 Fed.Appx. 442, 443 (5th Cir. 2004) *citing United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *Garcia*, 995 F.2d at 561 *citing United States v. Greenwood*, 974 F.2d 1449, 1458 (5th Cir. 1992); *Green v. Johnson,* 160 F.3d 1029, 1047 (5th Cir. 1998); *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789 (noting that it is the jury's responsibility to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts.").

Accordingly, "whether judges doubt the credibility of a witness, even an accomplice witness cooperating with the government, is beside the point . . . ."

*Greenwood*, 974 F.2d at 1458.   All credibility choices and conflicting inferences are to

be resolved in favor of the verdict.  *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005)

*citing Cyprian*, 197 F.3d at 740.  The reviewing court is not authorized to substitute its

interpretation of the evidence for that of the fact finder. *Alexander v. McCotter*, 775 F.2d

595, 598 (5th Cir. 1985).

Finally, "[s]o long as it is not facially insubstantial or incredible, the

uncorroborated testimony of a co-conspirator, even one who has chosen to cooperate with

the Government in exchange for non-prosecution or leniency, may be constitutionally

sufficient evidence to convict."  *Green,* 974 F.2d at 1457 *citing United States v. Lindell*,

881 F.2d 1313, 1322 (5th Cir.1989), *cert. denied sub nom. Kinnear v. United States*, 493

U.S. 1087, 110 S.Ct. 1152, 107 L.Ed.2d 1056 (1990).  Cases in which a witness'

testimony is so incredible or insubstantial that it may be discredited "are extremely rare."

*Id.* at 1458.

Under Louisiana law, armed robbery is defined in La.R.S. 14:64(A) as follows:

Armed robbery is the taking of anything of value belonging to another from
the person of another or that is in the immediate control of another, by use
of force or intimidation, while armed with a dangerous weapon.

Aggravated burglary is defined in La.R.S. 14:60 as follows:

Aggravated burglary is the unauthorized entering of any inhabited dwelling,
or of any structure, water craft, or movable where a person is present, with
the intent to commit a felony or any theft therein, if the offender,

(1) Is armed with a dangerous weapon; or

(2) After entering arms himself with a dangerous weapon; or

(3) Commits a battery upon any person while in such place, or in entering or leaving such place.

Criminal conspiracy is defined in La.R.S. 14:26(A) as follows:

Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.

If the intended basic crime has been consummated, the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one shall not bar prosecution for the other.

Under Louisiana law, "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."  La. R.S. 14:24.  Physical presence at the scene of a crime is not a requirement to be convicted as a principal to a crime.  *Grace,* 61 So.3d at 818 *citing* La. R.S. 14:24.

The evidence was summarized by the Third Circuit as follows:

Renee's [Nelson's] daughter, M.N. and her cousin, K.J. both testified that, at approximately 10:00 p.m., Renee's [Nelson's] fiancé, Jowaski Frank, dropped them off at Renee's [Nelson's] house. M.N. and K.J. testified that, when they entered the house, they were confronted by Tony [Thomas]  and Gavin [Hebert], who were armed and masked. Both of the girls testified that they knew Gavin [Hebert], but did not recognize his voice because he did not speak much during the robbery. M.N. testified that she recognized the silver handgun wielded by one man as the one from her mother's bedroom.

13

The men tied up the girls on M.N.'s bed and demanded money and drugs. They eventually took approximately fifty-five cents from M.N.'s pocket and eighty dollars from K.J.'s purse.

Testimony revealed that Renee [Nelson], Jowaski [Frank], his mother, Lisa Frank, and their friend Wilinsky Thomas returned to the house at approximately 10:30 p.m., and that Wilinsky's stepbrother, Kaninski [Larnette], dropped by about that time. The adults socialized in the garage for a while. Tony [Thomas] and Gavin [Hebert] eventually forced the adults into the house and repeatedly demanded money from them. Several adults testified that Tony [Thomas] and Gavin [Hebert] told them they were "from Baton Rouge" and that "Robert Drummer" sent them to rob them. Jowaski [Frank] testified that he heard one masked man say that "Charles" had "sent him for the money and he know it's there, he knows the money is here[.]" Jowaski [Frank] testified that they took a dollar from him and Kaninski [Larnette] testified that they took approximately seven hundred dollars from him.

Eventually, Kaninski [Larnette] told the men he could take them to get more money and that he told Tony [Thoams] that he would "give him some money to leave [them] alone." Kaninski [Larnette] testified that Tony [Thomas], brandishing the silver handgun, forced him to drive to his mother-in-law's house. According to Kaninski's [Larnette's] testimony, while they were in the car, Tony [Thomas] told him that the defendant sent the men to Renee's [Nelson's] house and he "paid them $5,000 to kill everybody in the house." Kaninski [Larnette] also testified that Tony [Thomas] made a phone call and asked about the money that was supposed to be in Renee's [Nleson's] house. Kaninski [Larnette] testified that the person on the phone told them to meet him on a road behind Tobacco Tavern, but that they did not meet the person although they drove to that location. Kaninski [Larnette] thought that the person on the phone was the defendant, but offered no other explanation for that assumption other than "who else he gonna call."

According to Kaninski [Larnette], while Tony [Thomas] was attempting to commit a second home invasion at his mother-in-law's house, he was shot and killed during a struggle. Kaninski [Larnette] then alerted the police to the hostage situation at Renee's [Nelson's] house. When the police arrived at Renee's [Nelson's] to investigate, Gavin [Hebert] ran out of the back door. Although one of the responding officers attempted to apprehend him, he

14

managed to escape. He hid under a trailer until he was captured the next day. In her incident report, the officer stated that she observed a second suspect run out of the back door. However, at trial, the officer stated that she had confused one of the victims for a suspect because he was wearing dark clothing. Additionally, Wilinsky testified about a "third robber" who stayed in the kitchen. No other witness testified that there were more than two robbers.

Gavin [Hebert] testified for the State at trial, and stated that he was not promised anything for his testimony and that he had not made any "deals" with the State or the district attorney's office. Gavin [Hebert] testified that he and Tony [Thoams] met with Tony's [Thomas'] uncle, the defendant, on the afternoon of March 3, 2009. According to Gavin's [Hebert's] testimony, the defendant had a "mission" for them, which was to get money from Kaninski [Larnette]. Gavin [Hebert] testified that the defendant told them the layout of the house they were supposed to rob, that there was supposed to be at least fifty thousand dollars, and where a silver handgun was located. Gavin [Hebert] testified that he, Tony [Thomas], and the defendant were supposed to split the money. Gavin [Hebert] also testified that the defendant told Tony [Thomas] to kill someone if he had to because they would "testify on [him]" if they were caught.

According to Gavin's [Hebert's] testimony, the defendant drove to an abandoned house on the other side of town, where Tony [Thomas] retrieved a sawed-off shotgun from under a couch. Tony [Thomas] then picked up some dark clothing from his stepmother's house and the defendant dropped both Tony [Thomas] and Gavin [Hebert] off at Gavin's [Hebert's] house to change. Gavin [Hebert] further testified that the defendant picked up both men and dropped them off outside Renee Nelson's house at about 9:30 p.m. According to Gavin [Hebert], he and Tony [Thomas] were to break into the house while the defendant waited across the street. Gavin [Hebert] testified that Tony [Thomas] called the defendant to make sure the "coast was clear" before they broke down the back door. Additionally, Gavin [Hebert] testified that the defendant would pick them up when they called to say they had the money. Generally, Gavin's [Hebert's] testimony corroborated the other witnesses' testimony regarding the robbery of Renee's [Nelson's] house. Gavin [Hebert] explained Tony's [Thomas'] statements that they were "from Baton Rouge" and that "Robert Drummer" sent them as intended to "throw them off and stuff...."

15

Jowaski [Frank], Wilinsky and Kaninski [Larnette] all testified that they recognized Tony's [Thoams'] voice. In particular, Kaninski [Larnette] testified that he had some altercations with the defendant and with Tony [Thomas] in the past. Renee [Nelson] testified that she and the defendant had dated at some point, and that the defendant used to have a key to her house but that he had given it back. Additionally, Renee [Nelson] identified as hers the silver handgun that the police seized from Kaninski's [Larnette's] mother-in-law's house.

The defendant's girlfriend, Shalana Doucet, testified that the defendant was coming down with the flu that day. She testified that Tony [Thomas], Gavin [Hebert] and "another little guy" came by the house about 4:00 or 5:00 p.m. and that the defendant gave them a ride somewhere. Shalana testified that, after that, the defendant was in or around the house with her until 8:00 p.m. when she went to take a nap. She further testified that, when she woke up at about 10:00 p.m., the defendant was sleeping on the couch at her mother's house. According to Shalana's testimony, Tony [Thomas] called between 10:00 and 10:30 p.m. and asked for a ride, but the defendant refused. Shalana agreed with the State's characterization that Tony [Thomas] was "angry" during that phone call. Shalana testified that, on her way to work between 10:30 and 11:00 p.m., she talked to the defendant on her cell phone.

Several other witnesses testified that they saw Gavin [Hebert] , Tony [Thomas] and another unidentified man with the defendant at about 4:00 or 5:00 p.m. and that the defendant gave them all a ride somewhere. Fernella Tezeno, Tony's stepmother, testified that the defendant dropped Tony [Thomas] off at her house about 5:00 or 5:30 p.m. She testified that there was no one else in the defendant's car and that he left alone. Additionally, she testified that Tony [Thomas] left her house soon thereafter and that she did not see who he met.

*State v. Grace*, 61 So.3d at 818-820.

In light of the above, viewing the evidence in the light most favorable to the prosecution as is required by *Jackson* and its progeny, the evidence presented at trial was sufficient to sustain petitioner's aggravated burglary, armed robbery and conspiracy convictions on *habeas* review.  Considering  the "great weight" afforded  to the state

16

court's determination and the above summarized evidence, the undersigned finds that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Although there were inconsistencies in Hebert's testimony concerning petitioner's location when the crime was committed and when he implicated petitioner his substantive testimony was corroborated by other witnesses.  Thus, the jury reasonably found that these discrepancies were entitled to little, if any, weight.  As he did in the Third Circuit on direct appeal, petitioner urges this Court to make credibility determinations and, more specifically, to find Hebert's testimony not credible, and accordingly, to weigh the evidence in his favor.  However, as recognized by the Third Circuit, on a sufficiency of the evidence review, it is not the province of a reviewing court to make credibility determinations or to review the weight of the evidence accepted by the jury. *See Young, Garcia, Greenwood, Green* and *Jackson*, *supra*.

As found by the Third Circuit, although the jury could have accepted the testimony of defense witnesses and rejected Hebert and the victims' testimony, and although the jury could have made contrary inferences from the evidence presented, the jury chose instead to credit the testimony of Hebert and the victims.

Their testimony establishes that petitioner recruited Hebert and Thomas to carry out an invasion of Nelson's home to take money from Kaninski Larnette and split the proceeds, that he planned and help prepare his accomplices to commit the invasion and robbery by driving them to procure a shotgun and dark clothing and then dropping them

17

off at Nelson's home and that he was initially to act as the getaway driver after the robbery had been completed.  This testimony is sufficient to establish that petitioner was a principal, as well as a co-conspirator, to aggravated burglary and armed robbery.  *See e.g. State v. Allen,* 828 So.2d 622 (La. App. 2nd Cir. 2002), *writ denied*, 847 So.2d 1255 (La. 2003), *cert. denied*, 540 U.S. 1185, 124 S.Ct. 1404 (2004) (affirming conviction for being a principal to armed robbery).  This court cannot find the testimony accepted by the jury so incredible or insubstantial that, as a matter of law, it can be discounted.

To the extent that petitioner argues that the jury should not have been able to consider the statements made by deceased co-conspirator Thomas to Kaninski Larnette and Jawoski Frank because the State had allegedly not presented a *prima facia* case of conspiracy, that claim is meritless.  The Third Circuit correctly found Hebert's testimony was alone sufficient to sustain petitioner's conspiracy convictions.  Moreover, contrary to petitioner's present allegations, Hebert's testimony, which established a *prima facie* case of conspiracy, was presented prior to the admission of the complained of co-conspirator statements.[6]

Finally, while petitioner apparently now urges this Court to consider the affidavits of his aunt regarding Hebert's alleged self-interest and various persons who purportedly could establish an alibi for petitioner, this Court cannot grant petitioner's request.  Sufficiency of the evidence review is limited to "record evidence." *Herrera v. Collins*,

---

[6]rec. doc. 19-3, pg. 59-110 (Hebert, Jury Trial Day 2, March 2, 2010); rec. doc. 19-3, pg. 160-202, and 170 (Larnette, Jury Trial Day 3, March 3, 2010); rec. doc. 19-3, pg. 212-243 and 223-224 (Frank, Jury Trial Day 3, March 3, 2010).

506 U.S. 390, 402, 113 S.Ct. 853, 861 (1993) *citing Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979*)*.  Such review "does not extend to nonrecord evidence, including newly discovered evidence." *Id.*

    For these reasons, petitioner's sufficiency of the evidence claim does not warrant federal *habeas* relief.  Accordingly;

    **IT IS RECOMMENDED** that petitioner's sole remaining sufficiency of the evidence claim be **DENIED AND DISMISSED WITH PREJUDICE**.

    Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

    Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

    Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge

issues a certificate of appealability, an appeal may not be taken to the court of appeals.

Within fourteen (14) days from service of this Report and Recommendation, the parties

may file a memorandum setting forth arguments on whether a certificate of appealability

should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be

provided to the District Judge at the time of filing.

      June 29, 2015, Lafayette, Louisiana.


                                      _____
                                        C. MICHAEL HILL
                                        UNITED STATES MAGISTRATE JUDGE